## DAVIS, DIRECTOR GENERAL, *v.* ZAGEL ET AL.

[No. 11,426. Filed March 8, 1923.]

RAILROADS.—*Injuries to Persons on Tracks.—Contributory Negligence.—Evidence.*—In an action for personal injuries, where there was uncontradicted evidence showing that plaintiff and trainmen knew that there was only a small space between a switch track and a scaffold which plaintiff was erecting, and they were watching to see whether a car would pass without striking the scaffold, and plaintiff, in his anxiety and desire to see whether the car was going to clear, although knowing of the danger and being repeatedly cautioned and warned by others, voluntarily walked toward the scaffold, and the car

struck the scaffold and knocked it down, injuring plaintiff, *held* that plaintiff was guilty of contributory negligence precluding recovery.

From Allen Circuit Court; *Sol A. Wood,* Judge.

Action by Henry E. Zagel against James C. Davis, Director General, and others. From a judgment for plaintiff, the named defendant appeals. *Reversed.*

*William H. Shambaugh, Walter Olds, Albert E. Thomas, W. A. Colston* and *W. J. Stevenson,* for appellant.

*Frank R. Dulin* and *Harry H. Hilgemann,* for appellees.

MCMAHAN, J.—Henry E. Zagel, hereafter referred to as appellee, filed his complaint against appellant and appellee Wayne Oil Tank and Pump Company, alleging that, while he was at work on the premises of the pump company, appellant, operating the New York, Chicago and St. Louis Railroad ran an engine into the plant of said pump company to remove a loaded car, and that by reason of the negligence of appellant and the pump company, a ladder was knocked down, and in falling struck and injured appellee Zagel. Appellant and the pump company each filed separate answers of general denial.

There was a trial by jury which resulted in a verdict for appellee against both defendants. The pump company's motion for a new trial was sustained. The motion of appellant for a new trial was overruled and judgment entered against appellant.

The errors relied upon for reversal relate to the overruling of appellant's motion for a new trial, the main contention of appellant being that the verdict is not sustained by the evidence.

The facts as proven by the undisputed evidence are in substance as follows:

Appellee is a hod carrier and at the time of his injury and for more than twenty years prior thereto was in the employ of Irmscher and Sons, contractors. The plant of the pump company was located adjacent to and north of the tracks of the New York, Chicago and St. Louis Railroad Company in the city of Fort Wayne. There was a switch from the railroad to the pump company's plant running east of and within a few feet of the boiler house and into the tank shop. Cars were set in the tank shop to be loaded with tanks and taken out practically every day. In 1919 the pump company desired to have a second switch built into its plant, but on account of the location of the buildings it was necessary to tear down the corner of the boiler house and rebuild the wall, moving the same in about eighteen inches at the southeast corner. The pump company employed Irmscher and Sons to tear down and rebuild this wall. After the wall had been torn down, appellee and one Gerwig, a mason also an employe of Irmscher and Sons, were directed by their employers to rebuild it so that the corner of the building would be about eighteen inches farther from the switch. Without any farther instructions from any one and knowing the location and use of the switch, appellee and Gerwig proceeded to rebuild the wall. When the new wall had been built about four feet high appellee and Gerwig concluded that it was necessary to and they did erect a scaffold on which they could stand in order to do their work. They soon saw this scaffold was too near the switch tracks, and the next day they took it down and built another a little farther from the switch. Subsequently they concluded that this one was too close to the switch and they took it down and built a third one a little farther away from the tracks. The scaffold last built was too narrow for both of them to work on, so that appellee when he carried the brick or mortar up, Gerwig would take both

brick and mortar out of the hod and put them on the scaffold while appellee would stand on a ladder. On the day of the injury, that being the same day when the third scaffold was built and while appellee and Gerwig were at work, a switch engine came in on the track for the purpose of removing a loaded car from the tank shop. Appellee and Gerwig after having been informed that the engine was to be run into the tank shop, got down from the scaffold, and moved the ladder to the north of the scaffold and leaned it against the boiler house, after which appellee and Gerwig got out of the way so the engine could get into the building. After the engine went into the tank shop they waited and did not return to work until it came out. The switch curved as it passed the boiler house. Appellee knew that it was doubtful whether the scaffold was far enough away from the switch so as to allow the loaded car to pass and as the engine came out with the loaded car he watched it to see if it would knock the scaffold down.

Appellee, in testifying as to how the accident took place, said that when the engine came out with the loaded car there was a high stake in the stake pocket on the front end and west side of the car, which extended up higher than the tank which was loaded on the car, and that this stake struck the scaffold and knocked it down. That the car was being moved in a southwest direction and when the scaffold was struck it fell to the northeast and knocked the ladder down. He saw the train crew getting ready to come out. He was getting ready for them and picked up the ladder and leaned it up against the boiler house which was west of the switch. He and Gerwig then went across the track to the east side and waited for the loaded car to come out. The car which was being pulled by the engine and was about thirty feet long had passed between him and the boiler house so he was standing east and north of it when the scaf-

fold fell. He stepped over to the track and watched the car. The north end of the car tore the scaffold down. The car had not passed him yet. It was between him and the scaffold and ladder. The ladder fell before the car went by. He was standing east of the switch four or five feet from Gerwig, who called to him to get away. In testifying concerning Gerwig calling to him to get away, appellee said: "I heard him; Gerwig got away. I did not go then; when I got away I went towards Gerwig. I do not know how near to Gerwig I was when the ladder fell and hit me, but Gerwig got away and he told me to get away." Appellee saw the condition of things and was afraid it was going to hit him but didn't move any further away when Gerwig told him to get away. When he moved away he thought the car was going to hit the scaffold, but made no further effort to get away, but walked toward the track after the car passed him going out. The stake pocket in the southwest corner of the car caught at corner of scaffold. He was looking over the car from the east. After the engine and car passed out he walked or started in there to see if it was going to hit the scaffold.

The following facts as testified to by other witnesses are not disputed. Appellant's yard foreman, Joseph Brendel, was present when the loaded car was being pulled out of the tank shop. When they went in to pull the car out he told appellee and Gerwig to get out of there as things were pretty close. Took from three to five minutes to back in and pull car out. When they pulled out and when they hit the scaffold the witness and appellee were standing east of the car, about the middle of car. Appellee started to walk toward the car when the witness said to him: "You had better stay back, because that is pretty close," and that appellee

said, "All right," but kept on going and followed the car as it pulled out and until the car scraped the scaffold or one of the posts of the scaffold. Gerwig saw appellee following the car and told him to get out, that it was not safe there. Appellee followed the car until he heard the crackling of the scaffold. The witness told him several times to get away, saw the ladder hit, saw it fall, and saw it hit appellee. He was going back when it caught him. Appellee was standing by witness and followed the car after it passed by. If appellee had remained where he was when witnesses told him to stay back the ladder would not have touched him. When appellee heard the scaffold falling he started running towards the ladder and he then turned and ran towards the witness. Appellee went twenty-five or thirty feet from where he was when witness first told him to stay back.

There is some conflict in the evidence as to when the car was placed in the tank shop to be loaded. Appellee testified that it was backed in the day he was hurt, that they pushed it in with the engine after he and Gerwig got away from the scaffold and that it was loaded and pulled out in a few minutes. All the other witnesses including the train crew and the men working in the tank shop testified that the car had been placed in the shop the day before and that it was loaded before the engine backed in on the day when appellee was hurt. There is also some conflict in the evidence as to what part of the car struck the scaffold and caused it to fall. Appellee said that there was a stake in the pocket at the southwest corner of the car that stuck up high enough that he could see it over the tank on the car and that this stake struck the scaffold and caused it to fall. He also said that the north end of the car struck the scaffold and caused it to fall. All the other witnesses denied that there was any such stake and said that the

stake pocket which extended out a few inches from the side of the car, or a small plate immediately beneath this pocket through which the rod ran that held the tank on the car, struck one of the uprights of the scaffold and caused it to fall.   But, in view of the conclusion we have reached, it is not material when the car was placed in the tank shop to be loaded, or whether it was a stake extending up from the stake pocket as testified to by appellee or whether it was the stake pocket on the side of the car that struck the corner of the scaffold or what part of the car struck the scaffold and caused it to fall.

The uncontradicted evidence shows that the trainmen, Gerwig and appellee, all knew there was not much room between the switch and the scaffold and they were all watching to see if the car would pass without striking.   They all knew there was danger.   Appellee not only knew that there was danger, but he had been warned by the trainmen and by Gerwig to stay back and to keep out of the way.   In his anxiety and desire to see whether the car was going to clear, appellee, in the face of the known danger and after having been repeatedly cautioned and warned, and after being told to get back and remain where it was safe, voluntarily walked into a place of known danger.   We cannot escape from the conclusion that the uncontradicted evidence conclusively shows that appellee was guilty of such contributory negligence as prevents a recovery.  This being true, it is not necessary for us to pass upon any of the other questions presented.

Judgment reversed with directions to sustain appellant's motion for a new trial and for further proceedings consistent with this opinion.